UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### [REDACTED] CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    (IN CHAMBERS) [REDACTED] – DEFENDANT DELOITTE LLP'S MOTION TO DISMISS CASE (Dkt. 287, filed June 4, 2018)

DEFENDANTS PETER BARNES, GARY BROWN, SILVER WHEATON CORP., AND GARY SMALLWOOD'S MOTION TO DISMISS CASE (Dkt. 292, filed June 4, 2018)

PLAINTIFF'S CROSS MOTION TO STRIKE EXHIBITS TO DEFENDANTS' MOTIONS TO DISMISS (Dkt. 316, June 6, 2018)

DEFENDANTS PETER BARNES, GARY BROWN, SILVER WHEATON CORP., AND GARY SMALLWOOD'S MOTION TO STRIKE IMPROPER EXPERT OPINION (Dkt. 415, filed February 7, 2019)

## I.    INTRODUCTION

On July 8, 2015, plaintiff Chris Masilionis filed this securities class action against defendants Silver Wheaton Corp. ("Silver Wheaton"), Randy V. J. Smallwood, Peter Barnes, and Gary Brown (collectively, "Silver Wheaton defendants"). Dkt. 1. On October 19, 2015, the Court consolidated the action with Steve Klein, et al. v. Silver Wheaton Corp., et al., Case No: 2:15-cv-5173-CAS-JEM, and appointed Joe Elek as lead plaintiff. Dkt. 55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

On January 29, 2016, the Silver Wheaton defendants filed a motion to dismiss the first consolidated complaint, arguing that plaintiffs failed to state a Rule 10b–5 claim under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4. Dkt. 61. On June 6, 2016, the Court denied the motion. Dkt. 79 ("Order"). Discovery, which had been stayed pursuant to the PSLRA, commenced and the parties filed a Joint Rule 26(f) Report on July 13, 2016. Dkt. 84. After moving for class certification on November 1, 2016, plaintiffs initiated the letters rogatory process to seek third-party discovery from Deloitte's Canadian affiliate, Deloitte LLP ("Deloitte"). Dkt. 91. On May 8, 2017, the Court granted plaintiffs' motion for class certification. Dkt. 148. On March 26, 2018, the Court granted plaintiffs' motion for leave to file a second amended complaint adding Deloitte as a defendant. Dkt. 248.

Plaintiffs' consolidated second amended complaint, filed on April 12, 2018, asserts three claims for relief: (1) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(a) et seq. ("the Exchange Act"), and Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b-5) as against the Silver Wheaton defendants, (2) violation of Section 20(a) of the Exchange Act as against the individual defendants Smallwood, Barnes, and Brown, and (3) violation of Section 10(b) of the Exchange Act as against Deloitte. Dkt. 253 ("SAC"). Plaintiffs allege that the class period runs from March 30, 2011 to July 6, 2015, inclusive ("the Class Period"). Id. ¶ 1.

On June 4, 2018, the Silver Wheaton defendants and Deloitte filed the instant motions to dismiss the second amended complaint. Dkt. 287 ("D. Mot."); Dkt. 292 ("SW Mot."). The Silver Wheaton defendants and Deloitte also filed requests for judicial notice. Dkt. 289 ("D. RJN"); Dkt. 293 ("SW RJN"). On July 6, 2018, plaintiffs filed an opposition to the motions to dismiss, dkt. 315 ("Opp'n"), and a cross motion to strike exhibits to defendants' motions to dismiss, dkt. 317 ("Mot. to Strike"). On July 30, 2018, Deloitte and the Silver Wheaton defendants filed oppositions to plaintiffs' motion to strike. Dkts. 337, 338. On August 6, 2018, Deloitte and the Silver Wheaton defendants filed reply briefs in support of their motions to dismiss, dkt. 348 ("Deloitte Reply"), dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

353 ("SW Reply"), and plaintiffs filed a reply brief in support of their motion to strike, dkt. 347.[1]

The Court held a hearing on December 17, 2018.  During the hearing, defendants represented that Silver Wheaton had settled its dispute with the Canadian Revenue Authority concerning the propriety of Silver Wheaton's tax position—the same issue that is central to the instant case—and argued that this settlement essentially moots plaintiffs' action.  The Court ordered further briefing from the parties about the effect of the settlement on the instant action.  On January 11, 2019, the Silver Wheaton defendants and Deloitte filed supplemental briefs, dkts. 386, 390, and plaintiffs responded on January 31, 2019, dkt. 402.  On February 6, 2019, Deloitte requested leave to file a reply to plaintiffs' supplemental brief, which the Court granted.  Dkts. 409, 412.  Deloitte filed its reply the same day.  Dkt. 413.  On February 7, 2019, the Silver Wheaton defendants filed a motion to strike expert testimony that plaintiffs relied on in their supplemental brief.  Dkt. 415.  Plaintiffs responded on February 14, 2019, dkt. 429, and the Silver Wheaton defendants filed a reply on February 21, 2019, dkt. 431.

Having carefully considered the parties arguments, the Court finds and concludes as follows.

**II.    BACKGROUND**

Plaintiffs allege the following facts in the second amended complaint.

**A.    Silver Wheaton Corporation**

Defendant Silver Wheaton is a Canadian Company, headquartered in Vancouver, British Columbia whose shares are traded on the NYSE under the ticker symbol "SLW."

---

[1]      The Court is also in receipt of the parties' filings regarding the Tax Court of Canada's decision in <u>Cameco Corp. v. Her Majesty the Queen</u>, in which the court reversed the CRA's reassessment of Cameco's tax position.  Dkts. 371, 375.  The Court does not reach the parties' dispute about the significance of this decision because the Court does not rely on the plaintiffs' allegations about Cameco to resolve the instant motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

[REDACTED] CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|----------|---------------------------------------------------------------|------|----------------|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

SAC ¶ 45.  Silver Wheaton and its subsidiaries purchase and sell silver worldwide.  Id. ¶¶ 2–3, 119.  Silver Wheaton enters into so-called "streaming agreements," whereby it makes a large up-front payment for the right to purchase a portion of the mine's future silver output for a low price.  Id. ¶ 119.  That price is calculated as the average global cost of silver production.  Id.  Silver Wheaton earns profits by selling the silver purchased pursuant to these streaming agreements and reselling it to brokers at the market price.  Id.

Plaintiffs allege that Silver Wheaton evaded Canadian income taxes by creating a Cayman Islands subsidiary ("SW Cayman") to sign the streaming agreements and sell the silver.  Id. ¶ 5.  By doing so, Silver Wheaton ascribed substantially all its profits to SW Cayman, which was not obligated to pay any income taxes under Caymans Islands law.  Id.

The individually named defendants are all current and former executives of Silver Wheaton.  Specifically, Smallwood has served as Silver Wheaton's President since January 2010 and as the company's Chief Executive Officer ("CEO") since April 11, 2011.  Id. ¶ 46.  Barnes served as Silver Wheaton's CEO and as a member of the company's board of directors from 2006 until April 11, 2011.  Id. ¶ 47.  And Brown joined Silver Wheaton in 2008 and has served as the company's Chief Financial Officer ("CFO") throughout the Class Period.  Id. ¶ 48.

**B.    Canada's Transfer Pricing Rules**

This case turns, in large part, on defendants' interpretation and application of Canada's corporate income tax laws.  Accordingly, the Court begins with a brief overview of several pertinent provisions of the Canadian Income Tax Act.

Pursuant to the Canadian Income Tax Act, when a person or corporation sells something of value, such as property, services, commercial opportunities, or any other right or advantage, they are generally required to include the amount they received from the purchaser when computing their taxable income.  See generally R.S.C. 1985, c. 1. (5th Supp.) (The "Canadian Income Tax Act").  In addition, Canadian corporations are subject to Canada's transfer pricing rules.  See generally R.S.C. 1985, c. 1. (5th Supp.) § 247.  Transfer pricing refers to the prices at which services, tangible property, and intangible property are traded across international borders between related entities and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

the transfer pricing rules govern the amount a corporation must report as taxable income based on such transactions.  M.N.R., Canadian Revenue Agency Information Circular 87-2R "International Transfer Pricing" (27 September, 1999) ("CRA Circular"), ¶ 108.  In general, Canada's transfer pricing rules require that when a taxpayer engages in a non-arm's length transaction it must report income from that transaction in such a manner so as to approximate the amount of income the taxpayer would have received had the transaction been negotiated at arm's length.  Id. ¶ 86.  These rules are premised on the "arm's length principle," which Canada's tax authority, the Canada Revenue Agency ("CRA"), summarizes as follows:

> Where . . . conditions are made or imposed between . . . two [non-arm's length] enterprises in their commercial or financial relations which differ from those which would be made between [arm's length] enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly

Id. ¶ 92 (quoting Organisation for Economic Co-operation and Development ("OECD"), *Model Tax Convention*, Art. 9, ¶1).

Canada's transfer pricing rules are principally set forth in section 247 of the Canadian Income Tax Act.  CRA Circular ¶ 11.  The rules apply to transactions between a Canadian taxpayer and a non-resident person or entity with whom the taxpayer does not deal at arm's length.  Id. ¶ 12.[2]  According to the CRA, Canadian courts consider the following criteria in assessing whether parties to a transaction are not dealing at arms' length: (1) was there a common mind which directs the bargaining for both parties to a transaction; (2) were the parties to a transaction acting in concert without separate

---

[2]    The transfer pricing rules also apply to non-arm's length transactions involving partnerships, see CRA Circular ¶ 12; however, these provisions are not relevant to the instant motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

interests; and (3) was there "de facto" control.  M.N.R. Interpretation Bulletin IT-419R2 "Meaning of Arm's Length" (8 June 2004), ¶ 23.[3]

For tax purposes, section 247 requires Canadian corporations to report their income from non-arm's length transactions with non-residents based on the pricing that would have been established had the transaction been at arm's length.  See also CRA Circular ¶ 7 ("[Transfer pricing] ensures that taxpayers, who are non-arm's length members of a group and engage in transactions with other members of the group, report substantially the same amount of income as they would if they had been dealing with each other at arm's length.").  If a Canadian corporation enters into a non-arm's length transaction with a non-resident and does not use arm's length pricing, the CRA may (a) recompute the taxable income of the corporation to reflect arm's length pricing, and (b) reassess the income tax payable by applying the income tax rate to the adjusted income. See R.S.C. 1985, c. 1. (5th Supp.), § 247(2); CRA Circular, at ¶ 13.  In addition, the CRA may also assess penalties to corporations who fail to report income using arm's length pricing and fail to make contemporaneous records documenting their reasonable efforts to establish arm's length prices.  R.S.C. 1985, c. 1. (5th Supp.), §§ 247(3)-(4); CRA Circular ¶ 14-18.

### C.    Silver Wheaton's Tax Position on SW Cayman

Plaintiffs allege that Silver Wheaton paid almost no income taxes in Canada because it shifted its income to SW Cayman, a subsidiary located in a jurisdiction without income taxes.  Id. ¶ 5.  This is so because Silver Wheaton took the position that SW Cayman was not only a separate entity, but that SW Cayman was an entrepreneur entitled to the profits of the entire enterprise, and that Silver Wheaton was a routine service provider to SW Cayman.  Id.

---

[3]    Interpretation Bulletin IT-419R2, which was in effect during the Class Period, was subsequently canceled by the CRA and replaced with Income Tax Folio S1-F5-C1, "Related Persons and Dealing at Arm's Length."  Nonetheless, Income Tax Folio S1-F5-C1 incorporates the same three criteria as Interpretation Bulletin IT-419R2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Nevertheless, plaintiffs contend that nearly all the activities of the combined enterprise of Silver Wheaton and SW Cayman are performed by Silver Wheaton. Id. Silver Wheaton employs engineers, geologists, and financial managers to build complex models to identify and assess the potential output and cost to develop and operate mines. Id. Silver Wheaton also analyzes whether the transactions are sufficiently safe from political, geological, and operational risks. Id. Silver Wheaton personnel approach mines and negotiate complicated streaming agreements, relying on the skills and credibility they have developed over decades-long careers. Id. Silver Wheaton negotiates and secures hundreds of millions of dollars of financing. Id. And Silver Wheaton's board of directors considers at length each of these agreements by asking questions and weighing the advice of financial and other professionals. Id.

Plaintiffs allege that SW Cayman, on the other hand, performs the sole function of selling silver. Id. ¶ 122. Plaintiff goes so far as to assert that SW Cayman "is a strawman that holds the streaming contracts that Silver Wheaton assigns to it, and nothing more," and that Silver Wheaton accounts for nearly all the business of the combined enterprise. Id.

A former employee of SW Cayman—referred to in the SAC only as Former Employee 1 ("FE1")—states that she observed and/or was informed by her SW Cayman superiors that all material operational and strategic decisions with respect to SW Cayman were subject to the direction and approval of officers or employees of Silver Wheaton. Id. ¶ 136. In addition, FE1 states that all material agreements to which SW Cayman was a party were drafted and executed by officers or representatives of Silver Wheaton, and that all employees of SW Cayman reported to or accepted instruction from officers or employees of Silver Wheaton. Id. FE1 further states that the executive director of SW Cayman, Nik Tatarkin told her that he was not his own boss and that he "had to report to [Silver Wheaton CEO] Randy [Smallwood]" regarding any financial decisions that were outside Tatarkin's pre-approved authority. Id. ¶¶ 145–46. According to FE1, SW Cayman was simply viewed as a branch of Silver Wheaton. Id. ¶ 147.[4]

---

[4]    Plaintiffs state that FE1 was an accountant at Silver Wheaton's Cayman Islands office from December 2007 to November 2013. SAC ¶ 62. In this capacity, FE1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Plaintiffs contend that the employees of SW Cayman lacked the requisite professional experience and training to perform all the activities Silver Wheaton attributes to SW Cayman during the Class Period. Id. ¶ 138. In addition, Silver Wheaton assumed all material financial and contractual risks on behalf of SW Cayman during the Class Period, id. ¶ 177, and FE1 states that during negotiations of SW Cayman's streaming agreements and other material agreements, Tatarkin would represent that he entered such agreements "on behalf of [Silver Wheaton] as a whole and not just SW Cayman," id. ¶ 144. In sum, plaintiffs contend that SW Cayman would have had no operations or revenue during the Class Period if it were not for the efforts and involvement of Silver Wheaton in securing and funding agreements and managing and directing SW Cayman's activities. Id. ¶ 185.

Notwithstanding the substantial services Silver Wheaton provided to SW Cayman, plaintiff alleges that Silver Wheaton characterized itself as a routine services provider

performed bookkeeping tasks, such as reconciliation, data entry and making sure the company was receiving payments it was expecting. Id. FE1 reported to Tatarkin and Brad Carpenter, as well as Giselle Fedalizo, who was manager of Corporate Accounting at Silver Wheaton when he began working as the Assistant Controller at SW Cayman in July 2013. Id. ¶ 63. A court may credit the allegations of confidential witnesses, such as FE1, where "[p]laintiffs have properly alleged facts suggesting that the confidential witnesses have personal knowledge about the incidents they address." Mulligan v. Impax Labs., Inc., 36 F. Supp. 3d 942, 936 (N.D. Cal. 2014); see also Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th Cir. 2008) (court permitted to credit allegations of confidential witnesses where witnesses "would be in a position to infer" the facts to which they testified). Here, plaintiff alleges that FE1 was an accountant at SW Cayman and reported directly to two senior executives at SW Cayman. Accepting these allegations as true, it is reasonable to infer for pleading purposes that FE1 has knowledge regarding the way decisions were made at SW Cayman, the financial dealings of SW Cayman, and how SW Cayman interacted with and related to the broader business of Silver Wheaton. Accordingly, for purposes of ruling on the instant motion, the Court considers the testimony of FE1 and relies on her testimony to the extent it concerns topics of which she is reasonably likely to possess personal knowledge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

entitled to only a moderate return on some of its costs.  Id. ¶ 5.  By doing so, Silver Wheaton allegedly evaded more than CDN$200 million in taxes on the profits that SW Cayman earned.  Id.  [REDACTED]

### D.    The CRA Audits Silver Wheaton

According to plaintiffs, beginning in 2009 there was information in Canadian business sectors that the CRA was prioritizing audits of Canadian companies with large foreign income in low-tax jurisdictions, particularly in the natural resources industry. Id. ¶ 203.  In October 2009, the CRA announced to Silver Wheaton that it would audit its international transactions from 2005–2010.  Id. ¶ 272.  [REDACTED], and according to FE1, Tatarkin and other employees were "grilled" in practice sessions to ensure their answers did not raise suspicion.  Id. ¶ 296.  While conducting the audit, employees of the CRA told FE1: "We're here because we feel Silver Wheaton [has] not been paying their taxes."  Id. ¶ 208.

[REDACTED]

On July 6, 2015, Silver Wheaton issued a press release announcing that the CRA was proposing to reassess Silver Wheaton's tax liability.  Id. ¶ 461.  The press release stated, in pertinent part:

> Silver Wheaton Corp. . . . announces that it has received a proposal letter dated July 6, 2015 (the "Proposal") from the Canada Revenue Agency (the "CRA") in which CRA is proposing to reassess Silver Wheaton under various rules contained in the Income Tax Act (Canada).
>
> The Proposal outlines CRA's position that the transfer pricing provisions of the Income Tax Act (Canada) relating to income earned by our foreign subsidiaries outside of Canada should apply such that the income of Silver Wheaton subject to tax in Canada should be increased for the 2005 to 2010 taxation years (the "Relevant Taxation Years") by approximately Cdn$715 million (US$567 million).

* * *

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

> If the CRA reassesses Silver Wheaton on the basis outlined in the Proposal, and assuming that Silver Wheaton would be assessed taxes on the foreign subsidiaries' income on the same basis as its Canadian income, Silver Wheaton currently estimates on a preliminary basis that it would be subject to federal and provincial tax of approximately US$150 million in respect of the Relevant Taxation Years.   The Proposal also indicates that the CRA is seeking to apply transfer pricing penalties of approximately Cdn$72 million (US$57 million) in respect of the Relevant Taxation Years. . . .

Id.  The press release also stated that "Management believes that [Silver Wheaton] has filed its tax returns and paid applicable taxes in compliance with Canadian tax law." Id. The press release also quoted Smallwood who stated: "We remain confident in our business structure which we believe is consistent with that typically used by Canadian companies, including Canadian streaming companies, that have international operations." Id.  And the press release concluded by noting that "Silver Wheaton intends to vigorously defend its tax filing positions." Id.

On July 7, 2015, the day after Silver Wheaton issued the press release, Silver Wheaton's share price fell $2.08 or approximately 12% to close at $15.46 per share. Id. ¶ 462.  Shortly thereafter, two analysts covering Silver Wheaton issued reports estimating that the CRA tax audit could reduce Silver Wheaton's value by 40% and 30% respectively.  Id. ¶¶ 463–64.

**E.     Silver Wheaton's Alleged Misrepresentations and Omissions**

During the Class Period, Silver Wheaton submitted several annual and quarterly reports to the SEC detailing Silver Wheaton's financial position.[5]  Silver Wheaton

---

[5]     The SAC identifies six distinct sets of reports defendants submitted to the SEC: (1) a Form 40-F annual report on March 30, 2011; (2) Form 6-K quarterly reports on May 9, August 8, and November 9, 2011; (3) a Form 40-F annual report on March 27, 2012; (4) a Form 40-F annual report on April 2, 2013; (5) a Form 40-F annual report on March 31,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

appended consolidated financial statements for itself and its subsidiaries to their annual and quarterly reports, and these financial statements included balance sheets for fiscal years 2009 through 2014.  See, e.g., id. ¶¶ 416–417, 427–28.  Silver Wheaton represented that its consolidated financial statements were prepared in accordance with either Generally Accepted Accounting Principles ("GAAP") or International Financial Reporting Standards ("IFRS").  See, e.g., id. ¶¶ 416, 427.  As required by federal law, the individual defendants signed and certified that the financial information contained in these reports was accurate.  See, e.g., id. ¶¶ 414, 425.

Plaintiffs contend that the balance sheets included in Silver Wheaton's annual and quarterly reports were false and misleading because they failed to disclose a tax liability of USD$207 million (USD$150 million for unpaid income tax plus USD$57 million in mandatory penalties) for violating Canada's transfer pricing rules.  See, e.g., id. ¶¶ 418, 429, 438.  According to plaintiffs, under applicable provisions of GAAP and IFRS, defendants were required to recognize and record any tax liability that Silver Wheaton was "more likely than not" to incur.  Id. ¶¶ 419, 430.  In this case, plaintiffs contend that it was more likely than not that the CRA would reject Silver Wheaton's interpretation of transfer pricing rules and thus require Silver Wheaton to pay unpaid income tax plus appropriate penalties.  Id.  Accordingly, in plaintiffs' view, it was a violation of GAAP and IFRS for defendants not to recognize and record a tax liability of USD$207 million on Silver Wheaton's balance sheets.  Id.  Alternatively, even if Silver Wheaton was not more likely than not to incur a tax liability of USD$207 million, plaintiffs contend that, pursuant to other provisions of GAAP and IFRS, defendants were still required to disclose a "contingent" tax liability of USD$207 million.  Id. ¶¶ 153, 410.  By failing to either record or disclose an actual or contingent tax liability of USD$207 million, plaintiffs contend that the balance sheets incorporated into defendants annual and quarterly reports to the SEC contained false and misleading financial information regarding Silver Wheaton.  See, e.g., id. ¶¶ 418, 429, 438.

---

2014; and (6) a Form 40-F annual report on March 31, 2015.  SAC ¶¶ 414, 423, 425, 434, 443, 452.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Plaintiffs allege that the price of Silver Wheaton's securities was artificially inflated by defendants purportedly wrongful conduct. Id. ¶ 496. Accordingly, plaintiffs allege that they and other members of the putative Class in this action, all of whom purchased Silver Wheaton securities, suffered damages when it was disclosed that defendants had been disseminating inaccurate financial statements to the investing public. Id. ¶ 499.

### F. Deloitte's Clean Audit Reports

Plaintiffs allege that Deloitte knew Silver Wheaton's tax position was untenable yet turned a blind eye to continue earning lucrative fees. Deloitte was both Silver Wheaton's auditor and its [REDACTED] tax consultant. Id. ¶ 7. [REDACTED].

[REDACTED]

[REDACTED]

[REDACTED]. Plaintiffs allege that Deloitte turned a blind eye to the flaws in Silver Wheaton's transfer pricing position [REDACTED] even after the CRA audit began and throughout the period that CRA sought to recharacterize Silver Wheaton's transfer pricing transactions. Id. ¶ 339. Deloitte issued clean audit opinions on Silver Wheaton's financial statements each year, including throughout the Class Period.

## III. LEGAL STANDARD

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss. Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

[REDACTED] CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Rule 9(b) governs fraud claims, including securities fraud actions. Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014). A federal securities fraud suit is also subject to the demanding pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A plaintiff must also plead falsity, and courts "treat the falsity and scienter analyses as 'a single inquiry, because falsity and scienter are generally inferred from the same set of facts.'" Fodor v. Blakey, No. CV 11-08496 MMM (RZx), 2012 WL 12893985, at *9 (C.D. Cal. Feb. 21, 2012) (citations omitted). The Ninth Circuit, in interpreting the PSLRA, has clarified that only "[a] defendant who makes misrepresentations or omissions 'either intentionally or with deliberate recklessness' acts with scienter." Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 607 (9th Cir. 2014) (quoting In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005)). Thus, to satisfy PSLRA, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." Ronconi, 253 F.3d at 432. To constitute a "strong inference" of scienter, as required by the PSLRA, "an inference . . . must be more than merely plausible or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1051–52 (9th Cir. 2011) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007)). The court makes its assessment by assessing the facts collectively. Id.

## IV. ANALYSIS

### A. Judicial Notice

The defendants request judicial notice of the following documents under either the doctrine of incorporation by reference or Federal Rule of Evidence 201(b): (1) various publications of government agencies; (2) International Accounting Standards; (3) excerpts from Silver Wheaton's SEC filings; (4) a Bloomberg chart reflecting Silver Wheaton's stock prices; (5) Silver Wheaton's transfer pricing studies prepared by PwC; (6) excerpts of deposition transcripts; (7) communications between the CRA and Silver Wheaton; (8) Deloitte memoranda; (9) excerpts from Silver Wheaton's risk reports; (10) Silver Wheaton's appeal to the Tax Court of Canada; (11) various analyst reports and news articles; (12) a Silver Wheaton press release; (13) Deloitte's audit working papers; and (14) various emails sent among Silver Wheaton, Deloitte, and PwC. SW RJN at 2–9; D. RJN at 3–11. Collectively, these documents exceed one thousand pages. Plaintiffs object to most of defendants' requests as not properly the subject of judicial notice, unreliable, or inappropriately relied upon for the truth of their contents. Opp'n to RJN at 1.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider materials incorporated by reference in the complaint, or materials subject to judicial notice under Federal Rule of Evidence 201. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). A court may judicially notice an adjudicative fact if it is "not subject to reasonable dispute" because it is "generally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Incorporation-by-reference, on the other hand, "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." Khoja, 899 F.3d at 1002. A defendant may seek to incorporate a document into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

However, the Ninth Circuit has noted a "concerning pattern in securities cases like this one: exploiting these procedures to defeat what would otherwise constitute adequately stated claims at the pleading stage." Khoja, 899 F.3d at 998. Although "judicial notice and incorporation-by-reference do have roles to play at the pleading stage[,] [t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results." Id. "If defendants are permitted to present their own version of the facts at the pleading stage— and district courts accept those facts as uncontroverted and true—it becomes near impossible for the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." Id. at 999.

Defendants have asked the Court to consider over a thousand pages of extrinsic documents in deciding the instant motion to dismiss. Although defendants do not specify exactly which facts it requests the Court to judicially notice from their exhibits, it appears from their briefing that defendants are relying on these exhibits to present their own version of the facts to defeat plaintiffs' claims at the pleading stage. As explained above, it would be inappropriate for the Court to consider defendants' exhibits for this purpose.

Accordingly, the Court **DENIES** defendants' requests for judicial notice to the extent the defendants seek to have this Court rely on these documents to adopt defendants' version of facts at the pleading stage.[6] The Court, however, **GRANTS**

---

[6]     The Court is also in receipt of the Silver Wheaton's supplemental request for judicial notice of a December 13, 2018 press release announcing a settlement with the CRA. Dkt. 378. The Court cannot judicially notice this press release for the fact that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL        'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

defendants' request to judicially notice Silver Wheaton's SEC filings for the fact that those filings contained certain disclosures regarding the CRA audit and a risk of a material adverse impact on Silver Wheaton's financial performance in the event of a reassessment.  See D. Mot. at 11, 13, 15; SW Mot. at 9, 14, 19.  The Court need not rely on the other exhibits in defendants' requests for judicial notice to resolve the instant motion to dismiss.  The Court **DENIES** as moot plaintiffs' cross motion to strike exhibits to defendants' motions to dismiss.

### B.        Silver Wheaton Defendants' Motion to Dismiss

### i.        The First Motion to Dismiss

As stated above, the basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal connection between the material misrepresentation and the loss. Dura Pharms., 544 U.S. at 341–42 (2005).  In their motion to dismiss plaintiffs' first amended complaint, the Silver Wheaton defendants argued that plaintiffs did not sufficiently allege a material misrepresentation or omission, and that plaintiffs did not

---

Silver Wheaton reached a settlement with the CRA.  Moreover, the Court has reviewed the defendants' supplemental briefing concerning the significance of this settlement and is not persuaded at this juncture that a settlement reached in 2018 has any bearing on what Silver Wheaton should have disclosed in its SEC filings from 2011 to 2015.  See Order at 13 ("Even if the Canadian tax courts were ultimately to reverse the CRA's reassessment of Silver Wheaton's tax liability, plaintiffs could still prevail on their claims by demonstrating that it was false or misleading for defendants to fail to disclose, at a minimum, the *potential* that Silver Wheaton would be subject to an enhanced tax liability.") (emphasis added).  The Court need not resolve the Silver Wheaton defendants' motion to strike the expert testimony included in plaintiffs' supplemental brief because it does not rely on this testimony to reach this conclusion.  Accordingly, the Court **DENIES** as moot the Silver Wheaton defendants' motion to strike.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

sufficiently allege scienter.  See Dkt. 61-1.  The Court denied the Silver Wheaton defendant's motion.

With respect to material misrepresentations or omissions, the Court found that plaintiffs had stated at least a plausible claim that, pursuant to the requirements of both GAAP and IFRS, defendants were required to record or disclose a tax liability position of approximately USD$207 million on Silver Wheaton's balance sheets filed with the SEC. Id. at 13.  The Court further found that even if defendants were not required to record and recognize a tax liability of CDN$207 million—i.e., if it was not more likely than not that the CRA would reassess Silver Wheaton's tax liability—plaintiffs could still state a claim by demonstrating that defendants should have disclosed a "contingent" tax liability because GAAP Financial Accounting Standard Number 5 ("FAS 5") "requires that disclosure of [a] contingency shall be made when there is at least a *reasonable possibility* that a loss . . . may have been incurred."  U.S. S.E.C. v. Fehn, 97 F.3d 1276, 1291 (9th Cir. 1996) (emphasis in original) (quoting FAS 5 ¶ 10) (internal quotation marks omitted).  Order at 16.  Accordingly, the Court found that plaintiffs adequately alleged that the Silver Wheaton defendants made false or misleading statements in their annual and quarterly reports to the SEC.

With respect to scienter, the Court found that plaintiffs' allegations were sufficient to support a "strong" inference of scienter on several grounds.  For one, the Court found that FE1's allegations regarding how Silver Wheaton prepared her for her interview with the CRA supported a "strong" inference that Silver Wheaton and its executives knew or had reason to suspect that a CRA reassessment was possible, if not probable, and yet took no efforts to incorporate that fact into Silver Wheaton's financial statements.  Id. at 20. The Court also explained that the Ninth Circuit distinguishes minor or technical GAAP violations from significant violations that are probative of scienter, id. at 21 (citing Daou Sys., 411 F.3d at 1022) and determined that defendants' alleged omission of a potential tax liability of USD$207 million is of such a magnitude that it cannot be considered merely a "minor or technical" violation, id. at 21.  Accordingly, the Court denied the Silver Wheaton defendants' motion to dismiss in its entirety.

        **ii.      The Instant Motion to Dismiss**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |


In their motion to dismiss plaintiffs' second amended complaint, the Silver Wheaton defendants argue again that plaintiffs have not sufficiently alleged scienter. The defendants' arguments fail because plaintiffs' second amended complaint provides even more details supporting a strong inference of scienter. First, plaintiffs provide more facts supporting their claim that Silver Wheaton's tax position was indefensible because Silver Wheaton provided extensive resources to, and exercised control over, SW Cayman. For example, the second amended complaint adds allegations that:

- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- Silver Wheaton funded all of, and guaranteed several of, the streaming agreements, id. ¶¶ 183–84;
- [REDACTED]

The second amended complaint also provides more details as to the extent to which the Silver Wheaton defendants were aware of the CRA's plans to audit, and then, recharacterize Silver Wheaton's transfer pricing transactions, as well as Silver Wheaton's awareness that there was a substantial risk the CRA would invalidate its tax position and require Silver Wheaton to pay back taxes:

- Silver Wheaton was informed of the CRA audit in October 2009, id. ¶ 272;
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

These additional facts are only some of the many facts that plaintiffs added to the first consolidated complaint.  Accordingly, the Court sees no basis to depart from its earlier ruling that plaintiffs' allegations give rise to a strong inference of scienter.

Defendants suggest that plaintiffs have completely departed from their initial theory of the case—which was that Silver Wheaton hid information from Deloitte—and that all inferences of scienter are negated by plaintiffs' new allegations describing Deloitte's in-depth knowledge of Silver Wheaton's finances.  SW Mot. at 2.  According to defendants, the fact that Deloitte provided clean audits with full knowledge of Silver Wheaton's transfer pricing and the CRA audit demonstrates that Silver Wheaton and its advisors always believed that its transfer pricing and financial statements complied with Canadian rules and accounting standards.  Id. at 3.

Plaintiffs' earlier complaint did indeed allege that FE1 noticed that records of wire transfers to and from Silver Wheaton's corporate offices from SW Cayman were hidden from Deloitte during their annual audits, and the Court found that "evidence that defendants hid information from their independent auditors provides further proof of scienter."  Order at 22–23.  However, the Court did not rely on these allegations alone to find that plaintiffs sufficiently alleged scienter, thus the Court does not find that the absence of these allegations in the second amended complaint negates a strong inference of scienter.

As for defendants' argument that plaintiffs have not sufficiently alleged scienter because Deloitte issued clean audit opinions, the Court already addressed a variation of this argument in the first motion to dismiss and explained that:

"[T]he fact that the financial statements for the year in question were not restated does not end [a plaintiff's] case when [the plaintiff] has otherwise met the pleading requirements of the PLSRA."  Aldridge v. A.T. Cross Corp., 284 F.3d 72, 83 (1st Cir. 2002).  Moreover, while courts have found the opinions of independent auditors to be "highly probative of an absence of scienter," In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1157-58 (C.D. Cal. 2007), many courts have found adequate allegations of scienter even when the defendants had obtained "clean" audit opinions from their independent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL    'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

auditors and had never restated their financial statements, see, e.g., Aldridge, 284 F.3d at 83 (upholding complaint alleging securities fraud even in light of auditor's subsequent clean audit opinion on allegedly misstated financial results); In re LDK Solar Sec. Litig., 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) (same); In re Scottish Re Grp. Sec. Litig., 524 F. Supp. 2d 370, 390 (S.D.N.Y. 2007) (Sheindlin, J.) (finding failure to disclose uncertain tax liability in financial statements made these statements false and misleading even though defendants never restated their financial statements); see also Provenz v. Miller, 102 F.3d 1478, 1490 (9th Cir. 1996) (reversing grant of summary judgment even though defendant presented evidence it had worked with auditor to ensure financial statements were accurate).

Order at 21–22. The Court remains unpersuaded that Deloitte's clean audit opinions are sufficient to defeat the "strong" inference of scienter rising from plaintiffs' well-pleaded facts.

The Silver Wheaton defendants also attempt to relitigate the issue of whether plaintiffs set forth specific allegations from which it can be inferred that the individual defendants knowingly or recklessly certified false financial statements. SW Mot. at 21. The Court found that plaintiffs' earlier complaint was "replete with allegations that the individual defendants—all high-level Silver Wheaton executives—were heavily involved in the management and direction of SW Cayman." Order at 23. Plaintiffs have also alleged that Silver Wheaton received the CRA's recharacterization referrals which explained the facts supporting recharacterization and the amount of taxes that Silver Wheaton would owe if the CRA were successful in recharacterization. These allegations provide more support for plaintiffs' claim that the individual defendants were aware of the CRA audit and the CRA's position that Silver Wheaton was not paying adequate taxes. See also Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 988 (9th Cir. 2008) (finding scienter when it would be "absurd to suggest" defendants did not have knowledge of the facts rendering their statements misleading). Thus, plaintiffs have plausibly alleged that the individual defendants had reason to believe the CRA would reassess Silver Wheaton's tax liability to a significant degree but nonetheless still certified that Silver Wheaton's reports to the SEC did not omit any material facts necessary to make the reports not misleading. The Court sees no reason to depart from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

its earlier finding that plaintiffs alleged sufficient facts to infer that, at a minimum, the individual defendants acted with deliberate recklessness regarding the accuracy of Silver Wheaton's financial statements.

Accordingly, the Court finds that plaintiffs have sufficiently alleged facts raising a "strong" inference of scienter and **DENIES** the Silver Wheaton defendants' motion to dismiss the second amended complaint.

### C.   Deloitte's Instant Motion to Dismiss

In its motion to dismiss, Deloitte argues that: (1) plaintiffs have failed to adequately plead that Deloitte's opinions were false; (2) plaintiffs have failed to adequately plead scienter; and (3) plaintiffs have failed to adequately allege that their alleged losses were caused by Deloitte's alleged violations of accounting standards.  As a preliminary matter, the Court observes that Deloitte's arguments largely rely on an alternative set of facts drawn from voluminous extrinsic documents that, as discussed earlier, are not properly before the court.  The Court addresses each of Deloitte's arguments in turn but limits its analysis to the sufficiency of plaintiffs' allegations in the second amended complaint.

### i.      Material Misrepresentation or Omission

Silver Wheaton's 40-F forms filed with the SEC during the Class Period included audit reports from Deloitte providing that:

> Our responsibility is to express an opinion on these consolidated financial statements based on our audits. We conducted our audits in accordance with Canadian generally accepted auditing standards and the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

Compl. ¶¶ 441, 450, 459 (the "PCAOB Standards Statement"). The audit reports also provided that:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL       'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

> In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of Silver Wheaton Corp. and subsidiaries as at December 31, 2012 and December 31, 2011 and their financial performance and their cash flows for the years then ended in accordance with International Financial Reporting Standards as issued by the International Accounting Standards Board.

Id. (the "IFRS Opinion").

Plaintiffs allege that Deloitte's PCAOB Standards Statement was false because [REDACTED].  Plaintiffs also allege that Deloitte's IFRS Opinion was false because [REDACTED].

When a plaintiff challenges opinion statements under securities law, the plaintiff must allege "with particularity that the statements were both objectively and subjectively false or misleading." Rubke v. Capitol Bancorp, 551 F.3d 1156, 1162 (9th Cir. 2009). Deloitte argues that the second amended complaint fails to sufficiently allege that its PCAOB Standards Statement was objectively incorrect.  D. Mot. at 18.  The Court finds that plaintiffs have sufficiently alleged that Deloitte's PCAOB Standards Statement was false by alleging that: [REDACTED].  Deloitte's arguments to the contrary are better suited for a motion for summary judgment as they rely on facts that are not properly before Court.

As for the subjective inquiry, the Court must first resolve whether the PCAOB Standard Statement is an opinion statement or a statement of fact.  Deloitte contends that plaintiffs have failed to allege facts demonstrating that Deloitte did not believe that it had followed Canadian GAAP and PCAOB standards.  D. Mot. at 18–20.  Plaintiffs respond that they are not required to prove the subjective falsity of Deloitte's PCAOB Standards Statement because whether Deloitte complied with GAAP and PCAOB standards is a fact, not an opinion.  Opp'n at 35.  Neither party cites to any Ninth Circuit authority resolving the issue of whether an auditor's statement of compliance with GAAP and/or PCAOB standards is an opinion or a fact, and it appears that district courts in this circuit have come out both ways.  Compare Buttonwood Tree Value Partners, LP v. Sweeney, 910 F. Supp. 2d 1199, 1208 (C.D. Cal. 2012) (Carney, J.) ("[A]n auditor's [Generally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Accepted Auditing Standards ("GAAS")] and GAAP assertions are statements of professional judgment and opinion, not verifiable fact."), and Hufnagle v. Rino Intern. Corp., No. CV 10-08695 DDP (CBKx), 2013 WL 160223 (C.D. Cal. Jan. 14, 2013) (agreeing with Buttonwood), with In re Washington Mut., Inc. Sec. Derivative & ERISA Litig., 694 F. Supp. 2d 1192, 1224 (W.D. Wash. 2009) ("Whether or not [the auditor] employed the PCAOB standards is a verifiable factual statement that is material to those relying on its certification . . . ."). The Court is persuaded by the analysis in Buttonwood Tree Value Partners, LP v. Sweeney, 2012 WL 2086607 (C.D. Cal. June 7, 2012), wherein the court explained that "GAAS [and] GAAP assertions are matters of opinion, because both GAAS and GAAP are a collection of broad standards that are couched in rather general and in some cases inherently subjective terms" and "[d]etermining whether [the auditor] complied with GAAS would not be easily answerable as true or false, but would likely instead require reference to the opinions of other auditors familiar with GAAS." Id. at *2. Accordingly, the Court concludes that plaintiffs must allege the subjective falsity of Deloitte's PCAOB Standards Statement.

With respect to subjective falsity, plaintiffs allege that under IFRS International Accounting Standards ("IAS") 12 and 37, Silver Wheaton was required to recognize and record a tax position liability of $207 million if it was more likely than not that Silver Wheaton's transfer pricing tax position would not conform to the CRA's transfer pricing rules and result in the assessment of additional taxes, and that Deloitte [REDACTED]. Deloitte argues that under accounting standard IFRS IAS 37 ¶ 86, an entity must disclose "an estimate of [the] financial effect" of a contingent liability only "where practicable," and that during the relevant period, Deloitte determined that [REDACTED]. Dkt. 396. According to Deloitte, the documents cited in the second amended complaint "are far more consistent with the overwhelmingly strong inference that Deloitte believed there was only a remote possibility at best that Silver Wheaton would incur additional tax liability and that it was not practicable to speculate about the amount of any liability Silver Wheaton might ultimately incur given the early stages of the CRA Audit. D. MTD at 25. The Court is not persuaded by Deloitte's argument at this juncture because [REDACTED]. Accordingly, the Court finds that plaintiffs adequately allege that Deloitte did not believe that its audit complied with GAAS or PCAOP or that Silver Wheaton's financial statements complied with IFRS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

### ii.     Scienter

Defendants argue that it is particularly difficult for a plaintiff to establish a strong inference of scienter in the context of a claim against an outside auditor, and that plaintiffs have not succeeded in doing so.  D. Mot. at 24.  Indeed, "pleading sufficient facts to support a strong inference of scienter by an outside auditor is difficult because outsider auditors have more limited information than, for example, the company executives who oversee the audit."  New Mexico State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1097 (9th Cir. 2011).  And an auditor exercises "complex and subjective professional judgments that courts are not ideally positioned to second guess." Id. (quoting In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1197 (C.D. Cal. 2008).  Thus, "[t]he 'red flag' doctrine guides the GAAP and GAAS inquiries: the more facts alleged that should cause a reasonable auditor to investigate further before making a representation, the more cogent and compelling a scienter inference becomes." New Mexico, 641 F.3d at 1098 (9th Cir. 2011).  "Scienter requires more than a misapplication of accounting principles. The plaintiff must prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."  In re Software Toolworks Inc., 50 F.3d 615, 628 (9th Cir. 1994).

Plaintiffs allege that Deloitte acted with scienter because it was, at all relevant times, aware of the precariousness of Silver Wheaton's tax position yet adopted the position that Silver Wheaton did not need to disclose its contingent or possible tax liability:

[REDACTED]

Plaintiffs' allegations are sufficient to establish a compelling inference of scienter because Deloitte acknowledged the risks posed by Silver Wheaton's tax position and was fully aware of the progress and extent of the CRA's audit and recharacterization efforts, yet continued to issue clean audit opinions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL     'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

Moreover, the Court finds that plaintiffs' specific allegations of a financial motive further contribute to a strong inference of scienter. Although "an independent accounting firm's desire to maintain the fees flowing from the relationship with its client, standing alone, is not a sufficient 'motive' to raise a strong inference of scienter," Reiger v. Altris Software, Inc., 1999 WL 540893, at *3 (S.D. Cal. Apr. 30, 1999), "[c]ourts have been especially ready to find motive pleading adequate to survive 12(b)(6) motions in cases where the auditing company plays a dual role with respect to the client," In re Glob. Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 345 (S.D.N.Y. 2004). In cases involving an auditor performing a dual role, "an auditor may take on a vested interest in the performance and profitability of its client, and consequently weaken its ability to rely on its reputation in countering as 'irrational' allegations that it participated in a client's fraud." Id. (internal citations and quotation marks omitted). Here, plaintiffs allege that [REDACTED] Silver Wheaton's tax consulting work, which generated nearly half a million dollars per year, [REDACTED]. SAC ¶¶ 220, 243.

This Court also finds, as it did with respect to the Silver Wheaton defendants, that an omission of a potential tax liability of USD$207 million is of such a magnitude that it cannot be considered minor or technical in nature. See New Mexico, 641 F.3d at 1100 ("large GAAP and GAAS violations can play a role in finding scienter.").

Deloitte's arguments to the contrary—which are largely based on its contention that its actions and opinions were reasonable—are unavailing as they rely on facts that are not before the Court and are nonetheless unpersuasive given the strength of plaintiffs' allegations.

### iii.     Loss Causation

To adequately plead loss causation, a plaintiff must show that the alleged misstatement was the "proximate cause" of her loss. Mineworkers' Pension Scheme v. First Solar Inc., 881 F.3d 750, 752 (9th Cir. 2018). Where a plaintiff pleads a causation theory based on market revelation of fraud, "the complaint must allege that the practices the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1063 (9th Cir. 2008). Deloitte argues that plaintiffs have not alleged that Deloitte's purported violations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-5146-CAS (JEMx); conolidated w/2:15-cv-5173-CAS (JEMx) | Date | March 25, 2019 |
|---|---|---|---|
| Title | IN RE SILVER WHEATON CORP. SECURITIES LITIGATION | | |

of accounting rules were revealed to the market, and thus have failed to plead that their losses were caused by Deloitte's alleged misrepresentations or omissions.  D. Mot. at 35.

Plaintiffs allege that their losses were caused by the issuance of Silver Wheaton's press release on July 6, 2015, which disclosed the CRA's proposal letter and revealed that Silver Wheaton's financial statements had been concealing a Canadian tax liability.  See SAC ¶¶ 119, 461–62.  Deloitte represented that the financial statements at issue complied with relevant auditing standards, when those standards allegedly required the disclosure of Silver Wheaton's Canadian tax liability.  It appears that Deloitte's purported auditing violations are inextricably linked with the concealment of Silver Wheaton's tax liability.  Accordingly, whether Deloitte's alleged misrepresentations were a proximate cause of plaintiffs' harm is a question of fact that cannot be resolved at this juncture.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** the Silver Wheaton defendants' motion to dismiss the second amended complaint.

The Court **DENIES** Deloitte's motion to dismiss the second amended complaint.

The Court **DENIES** as moot plaintiffs' cross motion to strike exhibits to Defendants' motions to dismiss.

The Court **DENIES** as moot the Silver Wheaton defendants' motion to strike improper expert opinion.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | CMJ | |